## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 12 2018, 10:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of,

L.M. (Child),

and,

D.M. (Mother) & L.M. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

January 12, 2018

Court of Appeals Case No. 76A04-1705-JT-1131

Appeal from the Steuben Circuit Court

The Honorable Allen N. Wheat, Judge

Trial Court Cause No. 76C01-1609-JT-242



*Appellee-Petitioner.*

**Barnes, Judge.**

## Case Summary

L.M. ("Father") and D.M. ("Mother") appeal the termination of their parental rights to L.M. ("Child"). We affirm.

## Issue

Father and Mother raise one issue, which we restate as whether the evidence is sufficient to support the termination of their parental rights.

## Facts

Mother gave birth to a child in 2003, and the child resides with his father due to allegations of sexual abuse by Mother. Mother's parental rights to that child were ultimately terminated. Mother gave birth to another child in 2008, and in August 2008, Mother molested the infant. She claimed that she did so to prevent the infant's father from obtaining custody. Mother's parental rights to the infant were terminated, and she was convicted of the offense and sentenced to two years and five months in prison. She was also required to register as a

sex offender. While Mother was incarcerated, she gave birth to a child with Father. Father's and Mother's parental rights to that child were terminated. Father is also required to register as a sex offender. When Father was fifteen years old, he was convicted of molesting a five-year-old child. In 1998, Father had twins, and his parental rights to the twins were terminated in 2001.

[4] At some point, Father and Mother moved to Indiana. Child was born to Father and Mother in June 2015. He was born prematurely and had to remain in the hospital for two weeks due to pulmonary issues. The Department of Child Services ("DCS") became involved with the family when Child was born. Upon his release from the hospital, Father and Mother missed an appointment with the pediatrician. On August 5, 2015, DCS conducted a home visit and discovered that Child was having difficulty breathing, Child was dirty, and the family was living in a small cluttered camper without running water. DCS instructed Father and Mother to take Child to the emergency room, which they did. Child then missed another doctor's appointment on September 14, 2015. In September 2015, Father was sentenced to 365 days for failure to register as a sex offender.

[5] In October 2015, Child was removed from Father and Mother, and DCS filed a petition alleging that Child was a child in need of services ("CHINS") based on allegations of medical neglect and lack of a sanitary/safe environment. Father and Mother admitted that Child was a CHINS. In a January 2016 dispositional decree, the trial court ordered Father and Mother to, among other things, participate in services, including home-based counseling, complete a parenting

assessment and follow all recommendations, complete a psychological evaluation and follow all recommendations, complete a substance abuse assessment, complete random drug screens, and attend all scheduled visitations.

[6] For the most part, Father and Mother had regular supervised visits with Child. However, they made little to no progress in their parenting skills despite extensive services. Both Father and Mother had mental health issues, but both failed to take their medications regularly. Mother has been diagnosed with depression, and Father has been diagnosed with bipolar disorder. Father reported that he "hears dead people and [sic] tell him to hurt people if they make him mad." Tr. p. 157. Both Father and Mother have histories of substance abuse. Mother tested positive in mid-2016 for morphine, oxycodone, oxymorphone, and noroxycodone. Although they moved from the camper to another home in August 2016, during a November 2016 home visit, the family case manager and the CASA found Father and Mother's home in poor condition. There was trash on the floors, the garbage can and sinks were overflowing with items, and there was a used condom on the kitchen floor. A friend living with Father and Mother had a conviction for child molesting. During another home visit in March 2017, Father refused to allow the family case manager and CASA into the house. Father and Mother never progressed to unsupervised visits with Child. They made little progress regarding any of the goals or services.

[7] In September 2016, DCS filed a petition to terminate Father's and Mother's parental rights to Child. At the time of the termination hearing in April 2017,

Mother had a pending case for failure to register as a sex offender. If the trial court in that case accepted her plea agreement, she would receive an executed term of 365 days, and it was possible that she could be ordered to serve the sentence through community corrections. The trial court entered findings of fact and conclusions thereon terminating Father's and Mother's parental rights to Child. Father and Mother now appeal.

## Analysis

[8] Father and Mother challenge the termination of their parental rights to Child. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb County Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.'" *Id.* (quoting *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[9] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Id.* We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Father's and Mother's parental rights. Such findings of fact and conclusions thereon are required by Indiana Code Section 31-39-2-8(c). When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[10] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal

or the reasons for placement outside the home of the parents will not be remedied.

    (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)   that termination is in the best interests of the child; and

(D)   that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1234 (Ind. 1992).

## I. Changed Conditions

[11]   Father and Mother challenge the trial court's finding of a reasonable probability that the conditions resulting in Child's removal or the reasons for placement outside their home will not be remedied.[1]  In making this determination, the

---

[1] Father and Mother also argue that the trial court's conclusion that the continuation of the parent-child relationship poses a threat to the well-being of Child is clearly erroneous.  Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive. Subsection (b)(2)(B)(iii), which concerns repeated CHINS adjudications, is inapplicable here.  Consequently, DCS was required to demonstrate by clear and convincing evidence a reasonable probability that either: (1) the conditions that resulted in Child's removal or the reasons for placement outside the home of the parents will not be remedied, or (2) the continuation of the parent-child relationship poses a threat to the well-being of Child.  The trial court found a reasonable probability that the conditions that resulted in Child's removal and continued placement outside parents' home would not be remedied, and there is sufficient evidence in the record to support the trial court's

trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

[12]     Here, the trial court found:

> 4.     The DCS and CASA have proven by clear and convincing evidence that the reasons for [Child's] removal from the home of Mother and Father on October 2, 2015 will not be remedied in the future and, further, a reasonable probability exists that the continuation of the parent/child relationship possess a threat to the well-being of [Child].
>
> 5.     [Child] was removed from the care and custody of Mother and Father because of their dire economic circumstances, and lack of parenting skills including providing necessary medical care for [Child].
>
> 6.     Mother and Father, with the assistance of the Bowen Center, have been taking [Child] for his scheduled medical check-ups.
>
> 7.     The evidence before the Court proves that the economic circumstances of Mother and Father have

conclusion. Thus, we need not determine whether there was a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being. *See, e.g., Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 148 n.5 (Ind. 2005); *In re T.F.*, 743 N.E.2d 766, 774 (Ind. Ct. App. 2001), *trans. denied*.

actually deteriorated since the commencement of this case. Mother had a position of employment when this case began. On date of termination hearing Mother had no position of employment. Mother was optimistic that she would soon be starting work at the Gangster Bar and Grill and at Hungry Howies Pizza. However, Mother was unable to advise the Court when she would in fact be starting these positions of employment. At present, the monthly debts of Mother and Father far exceed their monthly income.

8. Mother seeks not 1 but 2 positions of employment. If Mother obtains these positions of employment [Child] would be left in the care of Father for significant periods of time while Mother worked outside the home. As stated above, Father is legally blind. Father has no plan in mind as to how he would care for and nurture [Child] while Mother struggled to earn income working 2 jobs.

9. Further, if it should come to pass that Mother in fact obtains 2 positions of employment outside the home, the poor living conditions which persist in the home of Mother and Father can only further deteriorate.

10. Mother, also, is scheduled for a sentencing hearing on May 8, 2017 in the Steuben Superior Court as a result of Mother entering a guilty plea to the offense of Failure to Register as a Sex Offender, a Level 6 Felony. The plea agreement, if accepted by the Court, requires Mother to serve an executed sentence of 365 days minus good time credit. If Mother should find herself in the Steuben County Jail, rather than on electronically monitored home detention which she is hoping the Judge will allow, this would impose an almost intolerable burden upon Father and [Child].

Appellant's App. Vol. II pp. 48-49.

[13] Father and Mother argue that the trial court's findings were erroneous because: (1) their economic circumstances had not deteriorated; (2) their home was suitable at the time of termination; and (3) Mother was not going to be incarcerated. DCS presented evidence, however, that Father and Mother had struggled to pay their rent, Father was receiving disability payments, and Mother had been working various jobs. The day before the termination hearing, Father indicated to the family case manager that they were behind on rent. The trial court's finding that the parents' economic circumstances had deteriorated is not clearly erroneous. As for parents' housing situation, DCS presented evidence that, in November 2016, the residence was in extremely poor condition. In March 2017, Father refused to allow the family case manager and CASA into the residence. The day before the termination hearing, the family case manager and CASA again visited the residence and found it improved. However, throughout these proceedings, the parents often made short-term improvements in their living conditions only to relapse. The trial court's finding regarding their housing is not clearly erroneous. Finally, with respect to Mother's incarceration, DCS presented evidence that Mother had entered into a plea agreement for a charge of failure to register as a sex offender. If the trial court in that case accepted her plea agreement, she would receive an executed term of 365 days, and it was possible that she could be ordered to serve the sentence through community corrections. Although Mother was hopeful that she would receive a sentence through community

corrections, that decision had not yet been made. The trial court's finding is not clearly erroneous.

[14] Father and Mother made little progress during these proceedings despite the services offered. Given Father's and Mother's lack of progress, criminal histories, and histories of termination of their parental rights, the trial court's finding of a reasonable probability that the conditions resulting in Child's removal or the reasons for placement outside their home will not be remedied is not clearly erroneous.

## II. Best Interests

[15] Father and Mother also challenge the trial court's finding that termination of their parental rights is in Child's best interests. In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence. *D.D.*, 804 N.E.2d at 267. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.*

[16] Father and Mother argue that they had a strong bond with Child and that severing the bond is not in Child's best interests. We acknowledge that Father and Mother had supervised visits with Child on a regular basis. However, despite extensive services, they made little improvement in their ability to parent Child. Both parents have mental health issues but do not regularly take their medications. Both have had criminal issues with failure to register as sex offenders during these proceedings, and their financial and housing circumstances have not substantially improved. Although Child was struggling

with his health and development when he was first placed in foster care, he is now thriving. The family case manager and the CASA both recommended that termination was in Child's best interests, and the trial court agreed. We cannot say that the trial court's finding is clearly erroneous.

## Conclusion

[17]    The evidence is sufficient to support the termination of Father's and Mother's parental rights to Child. We affirm.

[18]    Affirmed.


Najam, J., and Mathias, J., concur.